Our next case this morning is 523-0934 McAteer v. USAA Casualty Insurance Company. Is counsel present for that case? Is it Attorney Darr, is that correct? Yes, your honor. And Attorney Litchfield? Yes, your honor. Alright, thank you. If you're ready, you may proceed. Please be sure to state your name for the record for the recording. Good morning, my name is Lanny Darr. I'm the attorney for the appellant, Denise McAteer. May I please report for counsel? I'm here today seeking reversal of the Madison County trial court order that granted summary judgment to USAA Insurance as to the availability of underinsured motorist coverage and denying plaintiff's request to compel USAA to arbitrate that underinsured motorist claim. At the lower court, the facts really were not in dispute and both parties filed cross motions for summary judgment. And specifically and probably most importantly, there was no dispute in the record as to the fact that the insured, my client, failed to give advance notice of a settlement of an underlying automobile wreck case before pursuing underinsured motorist coverage. That was not in dispute. She did not give the notice. And the policy language at issue says, we do not provide uninsured coverage or UIM coverage for any covered person if that person or the legal representative settles the bodily injury or property damage claim without our consent. I just have one question for you. Is that 50? Is that the max? Is that the? Yes. Okay. My client, the lady who hit her, had a $50,000 liability policy. Okay, that's all I need. That was tendered. She accepted it. But she did not tender back to USAA. I'm not sure I understand entirely all the issues in this case, but it seemed to me as I read the briefs and tried to understand, the two competing arguments here are the policy, the plain language of the policy, and it was unambiguous, I believe, required your client to give notice that there was a proposed settlement. But there's also two Illinois Supreme Court cases that require the other side to allege prejudice, and there was no prejudice alleged. So is that, am I understanding? Right. That is the exact issue in the case. Whether prejudice is a requirement before you can be excused, before an insurer can be excused of their contractual obligation to provide underinsured benefits. Once again, there is no dispute that the policy language did not have a prejudice language in it. It just said if we don't consent, we don't owe you underinsured motorist coverage. And so we filed a motion to compel arbitration, and the underlying, the trial court found that since we signed an unlimited release, even though we accepted the full policy limits that we were prevented from pursuing underinsured motorist coverage, denied our motion to compel arbitration, granted the motion for summary judgment. And it was our contention that the, under our facts, that this was nothing more than a technical violation of policy language. It was not a material breach of the policy, and as this court is aware under all aspects of contract law, that typically material breaches are what's necessary before a party is excused from performing under the contract. Again, I'm not sure I understand entirely, but if we adopt your position, which I think is your position, that they were required to allege prejudice, it seems like if your client was required to disclose the settlement was going on and they didn't, why is it not presumed prejudice? Well, because Because it was settled for the limits, or what is the reason? It was because they settled for the limits and USAA never claimed that they would have done anything differently. They never claimed that they would have matched the payment and then preserved rights of subrogation and pursued this lady who has, this was the total limits of her insurance and there was no indication that she had assets above that. And therefore, it was an immaterial breach. It was a technical breach. And this court in Was it Mulholland? Is that what you're looking at? Pardon me? Were you talking about what this court did in Mulholland? Well, the Mulholland, that had a consent provision in it and a prejudice provision in it. And the court in Mulholland said, looking back at this court's earlier decision in Tuttle, which Tuttle just ruled in their favor, Tuttle says it didn't matter, you can just do that. You don't have to show a material breach. But this court later in Mulholland said, well, the current trend at that time, which was 1980, was that you have to show some prejudice. And even if the policy does not contain a prejudice requirement, it would be written in. So you can't just have a technical breach. You're going to have to show us some reason why you were harmed or hurt by this failure to give notice. And in this case, there was no allegation that they would have done anything different other than submitted to arbitration had they been given consent. There was no allegation and there was no consent. I mean, there was no suggestion in the trial court, nothing in the record, that suggested they would have followed the statute, which required them. They would have had to forward the $50,000 that was being paid by the tortfeasor's insurance company, matched it, matched that payment, and then pursued that woman for something above her insurance coverage. And there was just nothing in the record that would indicate that that's what they intended to do. And I don't think they'll take that position today. I mean, they just had the technical violation and they were relying on that technical violation of the policy language. And this court in Mulholland pointed back to Marsh v. Prestige Insurance, which had been a case decided by the 1st District after Tunnell, where Tunnell just upheld the policy language as written without implying any prejudice requirement. Wasn't the language in the policy in Mulholland different from the language in this case today? Yeah. Mulholland did not have a consent, I mean, did not have a prejudice requirement in that policy. But it still went on to say, we understand from Tunnell that that's not necessarily, you know, Tunnell says that that's the end. You just look at the policy language and that's it. Mulholland says that's not the trend anymore. The trend is now to imply a prejudice requirement into that language. And they cite this Marsh v. Prestige Insurance Company, which came out in 1978, which was four years after the Tunnell opinion. And that's when it says that insurer must prove substantial prejudice to enforce a lack of consent provision. And then it also went on to say whether or not there has been substantial prejudice is a question of fact that must be resolved. And in that case, they reversed and remanded it back because the court made no finding as to substantial prejudice. And said, you've got to cross that bridge before you can decide whether or not there's been compliance with the policy. And in this case, you know, this court couldn't remand it back for the court to make a determination as to prejudice. But there just simply wasn't anything in the record to find that. There wasn't even an allegation of that. And in fact, the trial court in this case said the finding was the plaintiff's sum of estate farm was something done after loss. The prejudice defendant's right against the owner or operator of the underinsured motor vehicle. So that's what the trial court said in this case was that the simple fact that we gave the release was the prejudice. And therefore, we sacrificed our underinsured motorist claim. And the courts, whether it be Mulholland, Marsh, and I'll talk about direct auto in a second. But those all say, no, there's got to be harm. There's got to be prejudice.  And in fact, in direct auto versus O'Neill, which is obviously it's not a, that was a uninsured motorist case. But it was late notice of an occurrence of the uninsured motorist claim. So they got 23 months notice, 23 months late of even the occurrence of the wreck. And direct auto in that case said, no, we've got a 30-day notice requirement. Therefore, technically, you're in violation of our notice provision. Very similar to what was said here. And the court in its direct auto versus O'Neill, which is a first district court case from 2022, says that not all breaches are the same. You've got to show some kind of prejudice to the non-binding party. And in fact, that an insurance company claiming prejudice must show what it would have done differently if it had received the timely notice. So if you take direct auto and you apply it to our facts, USAA would need to show we would have done something differently. Or at least make that allegation. Or at least put together a protocol or a standard that they have in the company that says under what circumstances do we advance this $50,000 payment. And pursue this lady, because under those facts, if they had done that, they would have paid us $50,000. We would not have signed the release with State Farm releasing the tort. And then they still would have been on the hook for the other $50,000 under insurance. So their exposure then goes from $50,000 to $100,000. So they would have to show under some level of facts that they had a reasonable belief that they could get $100,000 out of this lady. Or $50,000 out of State Farm and $50,000 out of her to be in the same position they would have been had we gave them the consent. And that's just a bridge they couldn't cross at the trial court level. They couldn't come up with any explanation as to how they would have done anything differently because they wouldn't have. They absolutely would not have done anything differently. All they have under our facts is a hyper-technical violation of a consent provision. Which, unless they can show prejudice, is an inconsequential breach. So I'm not saying that these breaches would never have consequences or never be prejudicial. But in this case, it was not. And these need to be taken fact by fact or case by case. And until they can at least allege at the trial court level some level of prejudice, the court should not have granted summary judgment. They should have forced them to submit to arbitration. That's what we would ask this court to do today. Thank you. Any questions? No questions. Thank you. Litchfield, is it? Yes, sir. It's spelled the same way as the town. Thank you. Wish we had founded it. Good morning, and may it please the Court. My name is Dan Litchfield. I represent the defendant, Appley USAA Insurance. It's important to start this with what we all know that we don't disagree about. Sometimes that's overlooked, and I think it's important in a case like this. We both agree that this is a clear and unambiguous policy exclusion. We both agree that no notice of this settlement was given to us. The first we heard of it was when we were sued. We all agree that we didn't give consent to this settlement. How could we? We didn't know what was going on until it was a done deal, and we were sued with respect to the coverage. This is an exclusion in the policy. This is not a condition, as we see in so many of the cases that McAteer relies on. This is a classic insurance policy, a statement of the grant of coverage, and then there are exclusions, third-party liability policies, first-party property policies, very common cadence to the way these contracts are written, and that's exactly what we're dealing with here. It's an exclusion, and that's an important fact to always keep in mind as we work through the cases that we're dealing with here, particularly the prejudice cases. Tudhill is the north star. It's a longstanding precedent from this court involving the same or substantially similar exclusion in a UIM policy, and Tudhill has stood the test of time, and I would argue even since Mulholland, and more about that in a moment. This is not a technical violation sort of situation because it's an exclusion. The exclusion helps to understand the scope of the coverage that was afforded in the first instance, as opposed to a situation where there is a condition in the policy. So we have the condition cases, cooperation cases. Absolutely, long been the law of this state that substantial prejudice is a necessary element if you're dealing with an assertion of a failure to cooperate under an insurance policy. That's a condition in the policy. That's not what we're talking about in this case. So the many cases that are cited by McAteer that involve failure to cooperate situations, practically all of them under third-party liability policies, by the way, simply have to be seen as distinguishable for that reason. The cooperation clauses in a third-party liability policy serve a very, very different purpose than the exclusion that we're talking about in our policy. The purpose of these cooperation policies is to make sure that the policyholder cooperates with the insurer in the course of defending themselves in this tripartite relationship against the third-party claimant. The cooperation that's needed is for the policyholder to help in discovery. Give us the documents. Help us answer interrogatories. Show up for your deposition. Show up for trial. Those are what those cases are about. And then we do talk about substantial prejudice. Balance of the cases that we see from McAteer almost entirely involve these distinguishable facts where the provision in those cases that deals with consent to settlement also expressly requires that there be prejudice. That's not the case for the language in the policy in total. That's not the case for the language in our policy. That is a material difference that is noted by this Court in the Mulholland case as a reason why Tuthill would be different and distinguishable from Mulholland. While I'm on Mulholland, I think the other thing to say about that case is that when it deals with prejudice, it relies very heavily on two cases, Marsh and Cheek. Marsh is not really helpful for McAteer in this case because Marsh relies entirely on these failure to cooperate decisions from our Supreme Court. So when Marsh is talking about what the trend is, when Tuthill is talking about the trend in the law and et cetera, and it looks to Marsh, one of the two cases it cites in that regard, it's looking to a case that itself relies utterly on Supreme Court authority and other authority about the failure to cooperate condition and isn't looking at an exclusion such as was at issue in the Tuthill case. Cheek is just flat out a failure to cooperate case and for the reasons I've articulated should not be seen as something that would undo the precedent set in Tuthill. To the degree we want to dive into the cases in Illinois that deal with the condition of notice, and that's usually a condition in most policies, particularly in third-party liability policies. The cases that address that prejudice issue, most notably Lavorsi-Marine from the Supreme Court in 2006, talk about the role of prejudice in this area of Illinois law. What they say is prejudice is absolutely an element that you would look to in a late notice situation involving a third-party liability policy in determining whether notice was unreasonable. It's one of multiple factors that our Supreme Court has recognized are pertinent to determining whether notice is unreasonable. Lavorsi-Marine goes on to say that if notice is unreasonable, we don't have to talk about prejudice at all, whether there is or there isn't. If it's unreasonable for other reasons, and there are many other reasons the Court has articulated why notice can be unreasonably late, then we don't need to reach substantial prejudice. And that's a difference between Illinois law and the law of some states immediately surrounding Illinois where substantial prejudice is a stand-alone, independent requirement irrespective of other reasons why notice might be unreasonably late. That's just not what our Supreme Court said in Lavorsi-Marine, and that hasn't been the law in Illinois with regard to late notice under third-party liability policies. Now, this is not a third-party liability coverage. There is a third-party liability coverage separately in our policy that's irrelevant to what we're talking about. But to the degree we look to McAteer's brief and see a reliance on cases dealing with cooperation as substantial prejudice and also see references to late notice and the idea of prejudice, and the idea is that you can look at prejudice, as our Supreme Court has told us, as one of many factors in deciding whether it's unreasonable, then we dive into those cases and we see that they don't help McAteer here at all. The root fact that is absolutely established in this case in the record and by admission of counsel is that we never got the chance. The first we knew about this deal was when we were sued. So arguments about what we might have done, could have done, should have done, in the event that the, you know, when I was a kid we watched a cartoon with a playback machine. If you could go back in time, as in that cartoon, and you could replay things, that might give you some hint to some of these answers because in that alternative timeline we might actually have gotten notice and then it would have been up to my client to deal with it in those circumstances. But otherwise, I think it is speculative to be talking about what we would have done, might have done, what opposing parties think we should have done in that alternative universe when the fact of the matter is we never got the chance. We never got the chance to consent. It's just an unalterable fact of this case. Tuck Hill is important for some other reasons because there's some talk in the briefing about things that derive from statute and thus maybe have to do with public policy, things of that sort. Tuck Hill addresses that. It actually addresses the predecessor provision, I would assert, the predecessor provision to 143A2 subsection 6, which is cited in the briefing and really has nothing to do with this case because if you read that statute, everything that's incumbent on the insurer to do becomes incumbent on the insurer as of the moment it gets notice, right? So it's just not a statute that could apply here because it sets out things that we have the right to do once we have notice, which we never got here. We had some discussion of this O'Neill case, also referred to, I think, as the direct insurance case. It doesn't really speak to this case at all. In O'Neill, the issue was substantial compliance rather than substantial prejudice, and the substantial compliance issue was the fact that the policy had an address stated in the policy, and it said to get coverage, you have to send us a notice at this address within 30 days. Company moved. Address was no longer valid. Notice went to that address, but there was nobody there to receive it. So as the case developed, the court held that there was substantial compliance with that notice requirement because the policyholder tried. They sent it to the address that the policy required they send it to, and that was enough for substantial compliance with that requirement. In O'Neill also, the carrier had notice of the matter before settlement issues arose in the liability case. That's another big distinction. And part of what was going on in that case was that insurer, having notice, being there present in the moment as the issue of settlement was arising and as settlement was on the table, hadn't done anything about it. It had the opportunity to, but it had chosen not to. That's an element going to the prejudice issue that's not available on the record here. The other thing about O'Neill is I believe it followed in time LaVorsey Marine, and there's no discussion of LaVorsey there. And I think that tends to suggest that the court wasn't swimming in those waters, so to speak. It wasn't looking at the issue of prejudice as addressed from the perspective of late notice conditions and third-party liability policies. Whereas what we're dealing with here is there is a late notice issue to be sure, but it's a first-party type of coverage, the UIM coverage. But more importantly, the exclusion, not a condition but an exclusion, defining what we agreed to cover, that requires that there be consent to the settlement, and clearly there was no consent here. So the cases we look at cited by McAteer, I mentioned Marsh. They also cite Roberts, Galarza, and Junkins. These are all distinguishable for reasons that I've touched on. They either involve cooperation clauses in third-party liability situations, or they involve just very, very different factual circumstances, such as medical payment set-off dispute, very different kind of a thing. Issue of whether you could limit the UIM coverage to an insured person riding in an insured vehicle, as opposed to a pedestrian hit in the crosswalk, that kind of a thing. So those cases are distinguishable. Cheek, Lappow, Under Construction, and Reed all cited and relied on heavily by McAteer, also distinguishable. Those are all cases involving cooperation provisions. There's also a statute cited and relied on by McAteer, which is Section 442. This is a provision that essentially requires that policy provisions be construed consistently with applicable statutes. We haven't been shown any hint here of some applicable statute that should supersede a provision in our policy. The only thing that was mentioned was 143A26. And as I explained earlier, that doesn't get activated until we receive notice and then we have certain statutory rights following on from getting notice, which everybody agrees we did not get here. I think also it's important to take a quick look at the Richter and Hertz cases, which are relied on by McAteer in support of the argument that, as a matter of law, consent would have done us no good. Richter was one of these cases involving notice that actually went to the insurer and the insurer had some opportunities there. Hertz limits its holding to a situation with a torque teaser, and their insurer knew about the insurer, the UIM insurer. And there's nothing in the record here to indicate that either Lasich or her insurer, State Farm, knew about us. They all did their deal. We weren't really there. The last thing I'd like to leave you with is, although the core, I think, of this case really ought to be about the exclusion for an unconsented settlement, there is a separate element of our policy that was violated here. This is a condition, the requirement that we be given notice of a settlement ahead of time so that we have certain rights under the policy and the statute to address the impending settlement. In regard to prejudice, are you saying that you shouldn't have to even allege prejudice because the plain language of the policy required you to be given notice, or are you saying prejudice should be presumed because you were harmed by not being given notice? I think both are perfectly justifiable on the record here in the case law we've been looking at. Let me unpack that a little bit. How do we ignore, then, the Illinois Supreme Court cases of MFA and Country Mutual? They both seem to require prejudice to be alleged. How do we ignore that? They're not dealing with an exclusion like this. They're not dealing with UIM coverage. They're dealing with third-party liability situations where either we're looking at late notice concerns or cooperation concerns, which I've addressed separately already. And I think that's different. I absolutely agree that the Illinois Supreme Court has addressed substantial prejudice in the context of the duty to cooperate, not what we're talking about here. We're not asserting a breach of the condition of cooperation in our policy. We're asserting that an exclusion applies, meaning there's no coverage to begin with. We're asserting that the condition for late notice, requiring timely notice, applies, and it's uncontroverted that we did not get any notice at all. To the degree we're talking about the latter, now we might want to dive into the Illinois Supreme Court cases that deal with prejudice in late notice, hence my discussion of Lavorsi-Reen earlier. But whichever way we want to look at this, I think the combination of the case law and the uncontroverted facts here lead us to an affirmance of the decision by the circuit court judge, Judge Foster. Thank you. Any other questions? No questions. All right. Thank you. Thank you for your kind attention. If I may just briefly, I want to dispel a couple of issues. First of all, counsel indicated that the first they knew of this situation was when they got sued for underinsured motorist coverage. And the record in this case establishes that that is not correct, and in particular it would be the common law record of 263 through 273 addresses part of this, when it was undisputed that my client gave a recorded statement to her insurance company within nine days of the accident. They paid her medical payments for a good section of the policy, so they paid her medical bills. They knew of her injury. They paid her bills, and they also inspected and repaired her vehicle after the accident. So at all times, they were aware of her claimed injuries, and there was a recorded statement she gave where she talked about her shoulder injury and the need for treatment, and they paid those bills as reasonable and customary medical treatment related to this occurrence. Not only that, but they fixed her vehicle. So there is no question that she cooperated. The other thing I would like to take a second and point out was that the Tuttle case and the problems it presents in this particular fact situation was decided in 1974. It wasn't until July 1, 1983, that the legislature mandated underinsured motorist coverage. And, of course, when you mandate, once it becomes a statutory requirement, then you're dealing with public policy issues, and you cannot take away this public policy benefit, and I think that's, at least in my mind, one explanation as to why you see the development of cases. Now, admittedly, some of them were even before July 1, 1983, but since then you start getting this substantial prejudice or prejudice requirement talking about, because then you've got a public policy interest, you've got a vested statutory right, which is trying to be taken away from them. And the statutory right in this case was to have the underinsured motorist coverage, which the legislature mandates that should be available to all motorists. And in this case, it wasn't through a hyper-technical, I'm not going to say hyper-technical, but through a technical breach of policy language. But once again, and counsel brought this up during their thing, that this is an exclusion to the policy. And as the court is aware, when we're talking about coverage, it's our obligation to show that the policy provides coverage, and that it's their burden to prove that an exclusion applies. And when they have the burden to prove that an exclusion applies, they needed to come forward with an evidence to show prejudice. We don't have to show the lack of prejudice. They have to show at the trial court level that they would have done something differently. Namely, they would have had to show, no, no, we would have came forward with $50,000, we would have given it to her, and we would have taken our chances against this woman who, by all accounts, has no other assets. We've gotten all of her liability. No one disputes that the liability insurance was $50,000. So there's no claim that there was additional policies that was not recovered under those circumstances. But they would need to prove that to rely on an exclusion. It would be their burden to prove that they had this evidence, and they would have needed to bring it forward at the trial court level. Since they didn't, it was error for the trial court to grant them summary judgment. This court should reverse that summary judgment and grant summary judgment for the plaintiff and to power arbitration of this claim. Thank you. Thank you. We appreciate your arguments. We consider the briefs. We'll consider your arguments as well. We'll take the matter under advisement and issue a decision of due course.